IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DONALD PRUITT,

   Petitioner,

v.              No. 1:18-cv-01056-JDB-jay
               Re: 1:16-cr-10074-JDB-1
UNITED STATES OF AMERICA,

   Respondent.

ORDER CONSTRUING PETITIONER'S REPLY AS
A MOTION FOR LEAVE TO FILE A SUPPLEMENTAL CLAIM,
DENYING PETITIONER'S MOTION,
DENYING § 2255 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

  Petitioner, Donald Pruitt,[1] has filed a pro se motion to vacate, set aside, or correct his sentence (the "Petition") pursuant to 28 U.S.C. § 2255.  (Docket Entry ("D.E." 1.)[2]  He also has submitted a document styled "Reply to U.S. Response to Petitioner's 28 U.S.C. § 2255 Petition." (D.E. 15.)  For the following reasons, the Court construes the document as a motion for leave to file a supplemental claim and DENIES the motion and the Petition.

BACKGROUND

  In July 2016, a federal grand jury for the Western District of Tennessee charged Pruitt in Counts 1 and 3 of an indictment with possession of methamphetamine with intent to distribute,

---

[1]The Court will refer to Pruitt as "the Defendant" in its discussion of the underlying criminal case.

[2]Record citations are to documents filed in the present case unless otherwise indicated.

and in Count 2 with aiding and abetting the possession and distribution of methamphetamine. (*United States v. Pruitt*, No. 1:16-cr-10074-JDB-1, D.E. 2.)  In February 2017, the Defendant pleaded guilty to Count 2 pursuant to a plea agreement in exchange for the Government's recommendation for dismissal of Counts 1 and 3.  (*Id.*, D.E. 59-60.)

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR").  The PSR calculated a base offense level of thirty pursuant to § 2D1.1(a)(5) of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.").  (PSR ¶ 20.)  The PSR advised that the Defendant was a career offender because the offense to which he pleaded guilty was committed subsequent to his sustaining at least two felony convictions for controlled substance offenses.  (*Id.* ¶ 26 (citing U.S.S.G. § 4B1.1(b).)  His offense level was therefore increased by two points.  Three points were deducted for his acceptance of responsibility. (*Id.* ¶¶ 27-28.)  "Based upon a total offense level of 29 and a criminal history category of VI, the guideline imprisonment range [was calculated to be] 151 months to 188 months" of incarceration. (*Id.* ¶ 82 (bolding omitted).)

A sentencing hearing was held on May 4, 2017.  (D.E. 75.)  The undersigned found that Pruitt was a career offender and applied a three-level reduction for his acceptance of responsibility. The resulting advisory Guidelines range was determined to be "between 151 and 181 months." (No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 321.)  Upon consideration of the advisory range and the sentencing factors as set forth in 18 U.S.C. § 3553(a), the undersigned "impose[d] a sentence at the low end of the [G]uideline range, that being 151 months."  (*Id.* at PageID 325.) The sentence also included three years of supervised release.  No direct appeal was taken.

DISCUSSION

Pruitt filed the Petition on April 2, 2018.  He asserts that defense counsel was ineffective at sentencing for failing to (1) argue that he was a drug addict (Claim 1), (2) challenge the Guidelines' career offender provision as running afoul of the sentencing factors set forth in § 3553(a) (Claim 2), (3) contend that certain sentencing factors warranted a lower sentence (Claims 3, 4, and 5), and (4) contest his career offender status (Claim 6).

The Respondent, the United States of America, filed a response to the Petition (D.E. 14), as well as an affidavit from defense counsel (D.E. 14-1).  The Government argues that all claims are without merit because they are belied by the record in Pruitt's criminal case.  Petitioner filed a reply maintaining that he no longer qualifies as a career offender after the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), *recons. denied*, 929 F.3d 317 (6th Cir. July 12, 2019).  (D.E. 15.)  The Court construes the document as a motion for leave to file a supplemental claim based on *Havis*.

I.      Legal Standards.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."  *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)) (internal quotation marks omitted).  "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions

rather than statements of fact." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude redressable under § 2255. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Such a claim is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,

466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II.     Claim 1.

Petitioner avers that counsel rendered ineffective assistance at sentencing by failing to argue that "each of [his] prior offenses represent his addiction and [were] not [committed] for personal financial gain." (D.E. 1 at PageID 4 (alterations to capitalization supplied).) He insists that he would have received a lower sentence had counsel presented that argument. The record belies the claim.[3]

In her position paper, counsel urged the Court to consider the fact that Defendant was a drug addict and that his drug use started at an early age. At sentencing, counsel "related to the Court that Mr. Pruitt had struggled with addiction his entire life[,] . . . called his step brother as a witness, who testified about this issue," and "asked the Court to recommend long term drug treatment." (D.E. 14-1 at PageID 67 (citing No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 308-14).) Counsel suggested to the Court that the Defendant's crimes were the result of his addictions:

> If he can stay sober, I don't think he'll be back in court anywhere. Every one of his convictions relates to substance abuse. Which isn't to ignore them or make light of them, but that it is the root of them.
>
> He's not out assaulting people to get money. He's not extorting people. He is a drug addict who is getting and trading and selling and buying and using to feed that addiction.

(No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 313.) Petitioner's allegation that counsel's performance was deficient regarding his history of addiction is therefore without merit.

---

[3]There is no factual dispute regarding any of Petitioner's claims. An evidentiary hearing is therefore not required.

The same is true regarding his argument that he was prejudiced by counsel's conduct.  The undersigned considered Defendant's substance abuse struggles in deciding to impose a sentence at the bottom of the Guidelines range, but determined that a departure below the range was not warranted in light of his extensive criminal history:

> And I'm certain he has some addictions.  But nonetheless, many of these convictions did include—even in the one we're talking about today, had some involvement, either he or his codefendant, in actual distributing, of course, to the confidential informant.
>
> So it's actually someone using and reselling the substances that Mr. Pruitt was involved in.  So again, a very, very disturbing and serious situation regarding Mr. Pruitt's activities.

(*Id.*, D.E. 89 at PageID 325.)  There is, therefore, no reasonable probability that the undersigned would have imposed a lesser sentence had counsel done more to emphasize Petitioner's addictions. Claim 1 is without merit and is DENIED.

III.    Claim 2.

The inmate maintains that counsel rendered ineffective assistance by failing to argue "that the Career Offender Guideline does not promote the goals of sentencing under 18 U.S.C. § 3553(a)."  (D.E. 1 at PageID 14 (alteration to capitalization supplied).)  More specifically, he insists that counsel should have argued that, "in enacting the Career Offender [G]uidelines, Congress expected the [Sentencing] Commission to target 'repeat drug traffickers'" and that he was not a repeat drug trafficker.  (*Id.*)  Respondent argues that the record refutes Petitioner's allegations.  The Government's position is well-taken.

As discussed above, the Guidelines' career offender provision provides for an enhanced offense level "if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least

6

two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  In determining an appropriate sentence, a court must consider "the kinds of sentence and the sentencing range" under the advisory Guidelines and the Sentencing Commission's "policy statements," as well as the following additional factors:  "the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the need for the sentence imposed . . .  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct;  . . . to protect the public from further crimes of the defendant; and . . .  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

At the sentencing hearing, counsel argued that Pruitt's Guidelines range, as calculated in part by application of the career offender provision, overstated his criminality.  In particular, she posited "that a sentence within the [G]uidelines range was 'way beyond' what is called for under 18 U.S.C. § 3553(a)."  (D.E. 14-1 at PageID 67 (quoting No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 312).)  She maintained that he should not be considered a person who traffics in drugs for monetary gain, but one who sells drugs only to "feed [his] addiction."  (No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 313.)  Counsel requested a sentence of 120 months' incarceration, which was thirty-one months below the bottom of the advisory range.  The record, thus, contradicts the allegation that counsel's performance was deficient.

In addition, as discussed *supra*, the undersigned considered counsel's argument for a downward departure and rejected the request. There is, therefore, no reasonable probability that the undersigned would have departed downward had counsel done more to distinguish Pruitt from "repeat drug traffickers." Claim 2 is without merit and is DENIED.

IV.     Claims 3, 4, and 5.

Pruitt submits in Claims 3 and 4 that counsel was ineffective for failing to argue that a lower sentence was warranted because there was no need to protect the public from him or to deter criminal conduct. He also posits in Claim 5 that counsel should have insisted that a shorter term of incarceration would have provided just punishment and respect for the law. The Government maintains that the record in the inmate's criminal case does not support the claims. The Court agrees.

In her affidavit, counsel addressed Claims 3, 4, and 5 thusly:

5. Mr. Pruitt next claims I failed to argue that the Section 3553(a) factor to protect the public didn't apply to his case. I could not argue this to the Court, because of his lengthy criminal history, and because he pleaded guilty to distribution of methamphetamine.

6. Mr. Pruitt argues that I "failed to research deterrence." This is one of the Section 3553(a) factors, and remains the law. I did argue that a sentence of no more than 120 months, a 31-month variance from the low end of the [G]uidelines, would satisfy that factor.

7. Mr. Pruitt next argues I failed to argue for a lower sentence, in light of the need to provide just punishment and respect for the law. As stated above, I did argue for a lower sentence. Mr. Pruitt claims he was a low-level drug user. He was a drug user, as noted in his Presentence Report, but he had also pleaded guilty to distribution of methamphetamine, in Count Two of the Indictment. He had multiple prior drug distribution offenses. And as the Court noted, Mr. Pruitt had 30-plus convictions for drug-related matters, including distribution,[] in his criminal history.

(D.E. 14-1 at PageID 67-68.)

The record supports counsel's recollection of the arguments she advanced regarding the § 3553(a) factors. (*See* No. 1:16-cr-10074-JDB-1, D.E. 89 at PageID 308-14.) Moreover, the crime

of conviction and the Defendant's criminal history support counsel's strategic decisions regarding what arguments to forego.  The record therefore does not support the allegations of deficient performance set forth in Claims 3, 4, and 5.

What is more, Petitioner was not prejudiced by counsel's conduct, but in fact benefitted from it.  Although a below-Guidelines sentence was not imposed, the undersigned sentenced Pruitt to a bottom-of-the-range sentence in part because of counsel's skillful and strategic arguments regarding the § 3553(a) factors.  Claims 3, 4, and 5 are therefore without merit and are DENIED.

V.      Claim 6.

The inmate claims that counsel provided ineffective assistance by failing to argue that his prior Tennessee drug convictions are not controlled substance offenses under the career offender provision in light of the United States Supreme Court's holding in *Mathis v. United States*, 136 S. Ct. 2243 (2016).  Respondent maintains that counsel was not ineffective for failing to make the argument.  The Court agrees.

The Guidelines define "controlled substance offense" as

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine if a conviction constitutes a controlled substance offense, a court must "apply a 'categorical' approach," which focuses on the statute under which the petitioner was convicted, rather than his conduct.  *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  If the statute is "divisible," meaning it describes multiple offenses, the court may "employ the 'modified categorical approach.'"  *United States v.*

9

*House*, 872 F.3d 748, 753 (6th Cir.) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)), *cert. denied*, 138 S. Ct. 367 (2017).  That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257). The Supreme Court in *Mathis* clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 136 S. Ct. at 2249.  If the statute lists alternative means, then it is "indivisible" and resort to the limited class of documents is prohibited. *Id.* at 2248.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a 'controlled substance offense.'" *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir.), *cert. denied*, 139 S. Ct. 608 (2018).  If the elements do not match, the prior conviction cannot be counted toward the defendant's career offender status. *Id.* at 555.

At sentencing, Pruitt qualified as a career offender based on six Tennessee drug convictions, three of which were for possession of a controlled substance with intent to manufacture, deliver, or sell, in violation of Tennessee Code Annotated § 39-17-417(a)(4).[4]  (PSR ¶¶ 39-40, 44.)  In her affidavit, counsel explained why she did not challenge his career-offender predicates:

> At the time of his sentencing, Mr. Pruitt had multiple qualifying predicate offenses for drug trafficking, as found in Paragraphs 39, 40, 42, 43, 44 and 45 of his Presentence Report.  I would have had to successfully challenge all but one of his

---

[4]The Tennessee statute provides in pertinent part that "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4).

> prior convictions listed in those paragraphs to prevail on this issue.  In good faith, and in my experience doing federal criminal defense, any objection to his status as a career offender would have been futile.

(D.E. 14-1 at PageID 68.)

A review of the state of the law at the time of Petitioner's sentencing and since confirms that an argument by counsel that her client did not have at least two prior convictions to qualify him as a career offender would have been rejected.  One month prior to Pruitt's sentencing hearing on May 4, 2017, the Sixth Circuit confirmed, post-*Mathis*, that the Tennessee offense of "possession of" a controlled substance "for resale," pursuant to "Tennessee Code Annotated § 39-17-417, . . . is a controlled-substance offense under the career-offender guideline."  *United States v. Alexander*, 686 F. App'x 326, 327-28 (6th Cir. 2017) (per curiam) (citing *United States v. Douglas*, 563 F. App'x. 371, 378 (6th Cir. 2014)).  More recently, the Sixth Circuit reaffirmed that the crime is a controlled-substance offense.  *See United States v. Garth*, 965 F.3d 493, 498 (6th Cir. 2020) ("Tennessee possession with intent to deliver is categorically a controlled-substance offense under U.S.S.G. § 4B1.2(b).").

Therefore, an objection that Petitioner was not a career offender would have been futile and "the failure to make futile objections does not constitute ineffective assistance[.]"  *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir.), *cert. denied*, 137 S. Ct. 76 (2016).  Claim 6 is DENIED.

VI.     Motion for Leave to File Supplemental Claim.

Movant requests leave to file a supplemental claim based on the Sixth Circuit's decision in *Havis*.  He insists that *Havis* has rendered improper the use of his prior Tennessee drug convictions to qualify him as a career offender.

The motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 2242; *see also* Rule 12 of the Rules Governing Section 2255 Proceedings in the United

States District Courts.  Rule 15 provides that a court should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave should not be granted when the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In *Havis*, the Sixth Circuit, sitting en banc, "decided that [the defendant's] Tennessee conviction for delivery of a controlled substance" under Tennessee Code Annotated § 39-17-417(a)(2),[5] "was *not* a controlled-substance offense under the [G]uidelines."  *Garth*, 965 F.3d at 496-97 (citing *Havis*, 927 F.3d at 387).  The court "reached that result because 'the parties agree[d] that the least culpable conduct' Tennessee delivery proscribes is 'attempted delivery,' but the guidelines' definition covers only the controlled-substance offenses listed in the definition (which are all completed crimes), not the attempted versions of those offenses listed in the Sentencing Commission's commentary."  *Id.* (citing *Havis*, 927 F.3d at 385, 387).

Petitioner's proposed *Havis* claim is non-cognizable in this collateral proceeding.  In *Bullard v. United States*, 937 F.3d 654 (6th Cir 2019), *cert. denied*, 140 S. Ct. 2786 (2020), the Sixth Circuit held that a claim under *Havis* is "best left for direct review."  *Bullard*, 937 F.3d at 661.  Relying on its decision in *Snider v. United States*, 908 F.3d 183 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1573 (2019), the *Bullard* court explained that

> "[a] misapplication-of-an-advisory-[G]uidelines-range claim is . . . not cognizable under § 2255.  Indeed, every circuit to look at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory [G]uideline calculations.  As a result, Bullard cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines.

*Bullard*, 937 F.3d at 660-61 (internal citations, quotation marks, and some brackets omitted).

---

[5]The Tennessee statute provides that "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance."  Tenn. Code Ann. § 39-17-417(a)(2).

But even if Petitioner's *Havis* claim could be brought in this § 2255 proceeding, it would be without merit.  As discussed above, the Sixth Circuit held in *Garth*, a post-*Havis* decision, that the Tennessee crime of possession-with-intent-to-deliver constitutes a controlled substance offense under the Guidelines.  *Garth*, 965 F.3d at 498.  The court reasoned that the felony is "a completed crime, not an attempted one that *Havis* puts beyond the [G]uidelines' reach."  *Id.* at 497.

Accordingly, amendment of the Petition to add a claim under *Havis* would be futile.  The motion is DENIED.

For the foregoing reasons, the Petition is DENIED.  Judgment shall be entered for Respondent.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[6]

IT IS SO ORDERED this 15th day of June 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6]If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.